**LEE NATIONAL CORPORATION,**
Plaintiff,

v.

**William N. DERAMUS, III, et al.,**
Defendants.

Civ. A. No. 3736.

United States District Court,
D. Delaware.

May 22, 1970.

Richard J. Abrams, of Richards, Layton & Finger, Wilmington, Del., and Eleanor M. Fox, of Simpson, Thacher & Bartlett, New York City, of counsel, for plaintiff.

S. Samuel Arsht, and Lewis S. Black, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Landon H. Rowland, of Watson, Ess, Marshall & Enggas, Kansas City, Mo., of counsel, for defendant, Kansas City Southern Industries, Inc.

## OPINION

LATCHUM, District Judge.

This case is before the Court on the motion of plaintiff, Lee National Corporation ("Lee National"), for an order under Rule 37(a) to compel answers to certain questions posed during oral depositions of the defendant, Kansas City Southern Industries, Inc. ("Kansas City"), through its Board Chairman and President, William N. Deramus, III, and its Vice President, Irvine O. Hockaday, Jr. Kansas City resists the Rule 37 motion on the ground that the proposed questions inquire into privileged matters protected by its attorney-client relationship.

Some background is necessary to understand the present problem. In broad aspect, the case grows out of alleged maneuvers taken by Kansas City to fend off an attempt by Lee National to take control of Kansas City. The suit purports to be brought by Lee National on behalf of itself and all other shareholders of Kansas City and derivatively on behalf of Kansas City against Kansas City and eighteen of its individual directors. Generally, the complaint alleges that Kansas City's management made various material misstatements and omissions in proxy solicitation materials used in calling a special meeting of shareholders on July 8, 1969 to consider amendments to Kansas City's Certificate of Incorporation. Lee National claims that the alleged mistatements and omisions in the proxy solicitation materials violated Section 14(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78n. The complaint further avers that Kansas City's management had proposed various amendments to Kansas City's charter, discussed in the proxy solicitation material, which were designed, in violation of Delaware law, to deprive its stockholders of rights essential to corporate democracy, and to entrench and perpetuate the incumbent management in control. Lee National thus claims that the charter amendments were not proposed in good faith and in the interest of Kansas City's stockholders, but rather for management's own personal interests and without any legitimate corporate purpose.

Kansas City's answer denies the essential allegations of the complaint and pleads three affirmative defenses,[1] viz. that: (1) Lee National had engaged in unlawful proxy solicitation in violation of Section 14(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78n, (2) the present action was not brought in good faith to enforce federal and state law rights in the interest of Kansas City stockholders but in its personal interest in order to further its unlawful proxy solicitation in contemplation of its tender offer, and (3) Lee National cannot fairly represent Kansas City or its stockholders because Lee National's corporate interest in acquiring control of Kansas City created a conflict of interest for Lee National. The individual defendants[2] have filed substantially the same answers and affirmative defenses and in addition have included motions to dismiss as to them for failure to state a cause of action and for improper venue.

At oral depositions of Kansas City, through Messrs. Deramus and Hockaday, taken in Kansas City, Missouri on March 25 and 27, 1970, Lee National's

---

1. The first two affirmative defenses are based on the doctrine of unclean hands.

2. The only named defendant who has not appeared or answered is H. L. Oppenheimer.

attorney inquired whether Kansas City had consulted with counsel concerning proposed changes in the bylaws and certificate of incorporation of Kansas City and, if so, when such consultations took place *and the names of the persons who were present.*

Kansas City's attorney objected to this line of questioning and instructed the deponents not to answer in so far as the questions inquired into the *subject matter* discussed with counsel on the ground such information was protected from disclosure by the attorney-client relationship existing between Kansas City and its outside counsel. The deponents were not advised to decline to answer questions relating to the dates or time deponents conferred with counsel or to any other persons who were present during the consultations. The positions of the opposing parties are stated in the transcript as follows:

*Kansas City's Position:* "[Deponent's] conversation with his counsel about a particular subject is privileged and hence a question * * * as to whether he talked about a particular subject matter with his counsel is also privileged.

That he talked with counsel and dates he talked with counsel, those matters are not privileged, and you may ask him when he talked with counsel and who was present at these various conversations with counsel."

*Lee National's Position:* "* * * It is my position that there is no privilege with respect to the fact of having conversations with attorneys on particular subject matters on particular days, and further that it is highly relevant and material to this lawsuit as to the timing of certain conversations."

Thus, the narrow issue presented is whether the deponents may be compelled to disclose the subject matter which they discussed with their company's counsel. The attorney-client privilege, based on public policy, is of ancient origin and was developed to promote full and complete freedom of consultation between clients and their legal advisors without any fear of compelled disclosure except with the client's consent. Consequently, it has long been settled that "where legal advice of any kind is sought from a professional legal advisor in his capacity as such, a communication relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by his legal advisor, except the protection be waived." 8 Wigmore, Evidence (McNaughton Rev.) § 2292. A corporation, such as Kansas City, is entitled to the same treatment as any other client in asserting the attorney-client privilege, and if it seeks legal advice from an attorney and in that relationship confidentially communicates information relating to the advice sought, it may protect itself from disclosure in the absence of a waiver thereof.[3] Radiant Burners, Inc. v. American Gas Association, 320 F.2d 314 (C.A.7, 1963), cert. den. 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963).

Absent waiver, this Court is of the opinion that ordinarily questions which would require a client to disclose the subject matter discussed confidentially with an attorney would be barred by the privilege.[4] Chirac v. Reinicker,

3. There is no dispute that the deponents, principal officers of Kansas City, when consulting with counsel were doing so on the company's behalf.

4. The relationship of attorney and client arose in Missouri where the attorney was engaged and consulted. Missouri enacted the common law attorney-client privilege in Sec. 491.060, R.S.Mo. 1959, V.A. M.S. Missouri decisions hold that an inquiry into the subject matter which a client discussed with his attorney is privileged. Fry v. Estes, 52 Mo.App. 1, 4 (1892); Farrell v. Farmers' Mutual Fire Ins. Co., 66 Mo.App. 153 (1896). Under the Conformity Act, 28 U.S.C. § 1652, Missouri law would apply.

11 Wheat. 278, 292–295, 24 U.S. 278, 292–295, 6 L.Ed. 474 (1826). This is so for several reasons: first, an affirmative response to such a question could be taken, by implication, to suggest that a client considered his position, with respect to the issues discussed, as either suspect or vulnerable. Second, such a rule would erode the basic public policy underlying the attorney-client privilege. It would be a simple matter to sharpen the questions to require greater and greater specificity regarding the matter discussed so as to avoid altogether the effectiveness of the privilege. Third, if the responses were merely limited to the most general terms of the subject discussed, it would be of little benefit or enlightenment to an opponent or to the Court, for certainly the privilege would prevent further questions going to the content of the discussions. Thus, without a showing of additional facts indicating a waiver, Kansas City's objections to the questions propounded might be well taken. The Court, however, finds a limited waiver of the privilege has been effected in this case. Mr. Deramus, in his affidavit,[5] stated that long before Lee National's interest in Kansas City and as early as May of 1967, attorneys for Kansas City had "recommended that consideration be given to a staggered Board and a higher vote requirement for mergers and consolidation than then provided in the Company's Certificate of Incorporation." Mr. Deramus also testified in his deposition[6] that Kansas City's outside counsel (Watson, Ess, Marshall and Enggas) had "gratuitously" suggested some charter and by-law changes as early as March and May of 1967, and had followed this up in the spring of 1969 by sending him the B. F. Goodrich-Northwest proxy materials, which related to various amendments involved in a battle for corporate control between those companies.[7] He further testified that he told Mr. Hockaday, Kansas City's Vice President, in late April 1969 to go ahead and do what was necessary in regard to the amendments and "get the lawyer to work on it."[8] And the amendments were prepared by Kansas City's attorneys in May 1969 upon Mr. Hockaday's instructions.[9]

When Kansas City freely and voluntarily revealed that this particular subject matter relating to the bylaw and charter amendments was discussed with counsel on several specific occasions, the attorney-client privilege was waived with respect to this particular subject matter. In other words, once Kansas City disclosed that it had some confidential conversations with counsel relating to the bylaw and charter amendments, it could not refuse to identify, on the ground of privilege, other occasions when this particular subject matter was discussed with counsel. Fairness demands that all occasions when this subject matter was discussed with counsel be revealed. It would be patently unfair for a client to disclose those instances which please him and withhold all other occasions. 8 Wigmore, Evidence § 2327 (McNaughton Rev.).

Accordingly, an order will be entered requiring the deponents to disclose all instances when the subject-matter relating to charter and bylaw amendments was discussed with counsel.

5. Deramus affidvait in opposition to the motion for injunctive relief, par. 3. (herein D. Afft.)

6. Deramus Deposition pp. 48, 97–99 (herein D.D.).

7. D.D. 46–7.

8. D.D. 53.

9. D.D. 56.