**Raymond P. SMITH, Jr., Plaintiff,**

v.

**ALYESKA PIPELINE SERVICE CO. and Sohio Pipe Line Co., Defendants.**

Civ. A. No. 81–259.

United States District Court,
D. Delaware.

May 10, 1982.

Vincent A. Theisen of Theisen, Lank, Mulford & Goldberg, Wilmington, Del., Allen Kirkpatrick, Lawrence A. Hymo and William T. Bullinger of Cushman, Darby & Cushman, Washington, D. C., of counsel, for plaintiff.

Januar D. Bove, Jr. of Connolly, Bove & Lodge, Wilmington, Del., Garret R. Tucker, Jr. and Alan Rosenthal of Baker & Botts, Houston, Texas, of counsel, for defendants.

OPINION

LATCHUM, Chief Judge.

Raymond P. Smith, Jr., has filed this action seeking to recover $5,000,000 from defendants Alyeska Pipeline Service Co. ("Alyeska") and Sohio Pipe Line Co. ("Sohio") for damages allegedly caused by defendants' willful and wanton infringement of U. S. Patent 3,741,233 ("the '233 Patent") issued June 26, 1973. (Docket Item ["D.I."] 1.) Plaintiff timely demanded a jury trial. (D.I. 8.) Smith asserts that the patent relates to a system for the protection of the environment against leaks from an oil pipeline and that Alyeska and Sohio have infringed the patent by incorporating a system covered by the '233 Patent into the Trans Alaskan Pipeline System ("TAPS"). (Id.) Smith further alleges that he has neither issued a license nor been compensated by Alyeska and Sohio, and that their adoption of the patented system was undertaken with full knowledge of his patent.[1] (D.I. 1, ¶¶ 6 & 7.)

Alyeska and Sohio deny that Smith is the owner of the '233 Patent and deny that any system covered by the '233 Patent has been incorporated into TAPS. (D.I. 5.) Alyeska and Sohio assert that the leak detection and control equipment and procedures used in TAPS follow the teachings of the prior art and utilize equipment and techniques known to and used by those skilled in the art prior to the alleged invention by Smith. (D.I. 5, ¶ 10.) Further, they allege that the '233 Patent is invalid, void and unenforceable because it fails to comply with the Patent Laws of the United States, including 35 U.S.C. §§ 101, 102, 103 and 112. (D.I. 5, ¶ 9.) Alyeska and Sohio also assert an affirmative defense alleging that Smith is barred by laches from recovering, or attempting to recover, any money damages from them for the alleged infringement of the '233 Patent. (D.I. 5, ¶ 11.)

Alyeska and Sohio have moved in this Court, pursuant to Rule 37(a), F.R.Civ.P.,

---

1. An earlier action relating to the same subject was filed in this Court but was dismissed without prejudice as premature because the pipeline had not been completed at the time the action was filed. See C.A. No. 75-210.

for an order requiring Smith to produce and permit Alyeska and Sohio to inspect and copy various documents. (D.I. 21.) They also have moved the Court, pursuant to Rule 42(b), F.R.Civ.P., to order the issues of liability (i.e., patent validity, enforceability and infringement) to be tried separately from, and prior to, the trial, if such be necessary, of the issue of damages. (D.I. 20.) Finally, Alyeska and Sohio have moved to stay all proceedings, including discovery, relative to damages, until it has been established that the patent in suit is valid and enforceable and has been infringed by the defendants.[2] (*Id.*)

## I. *Defendants' Rule 37(a) Motion.*

Alyeska and Sohio first move the Court, pursuant to Rule 37(a), for an order requiring Smith to produce and permit Alyeska and Sohio to inspect and copy all documents in his possession, custody or control comprising, recording or relating to communications between Smith and his former attorney, Donald E. Zinn,[3] dealing with the question whether Alyeska and/or TAPS infringed, or would infringe, the '233 Patent. (D.I. 21.) Alyeska and Sohio claim that they are entitled to these documents because they are relevant to the subject matter of this litigation and that the documents are believed to contain information reasonably calculated to lead to the discovery of admissible evidence. (*Id.*) Smith objects to defendants' motion to compel the production of documents on the grounds that the documents sought are protected by the attorney-client privilege. (D.I. 24 at 1.)

■■ Communications made by a client to his attorney for the purpose of seeking professional advice, as well as the responses by the attorney to such inquiries, are generally privileged communications and not subject to disclosure. *See Colton v. United States*, 306 F.2d 633, 639 (C.A. 2, 1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *Haymes v. Smith*, 73 F.R.D. 572, 577 (W.D.N.Y.1976). The attorney-client privilege is based on public policy "and was developed to promote full and complete freedom of consultation between clients and their legal advisors without any fear of compelled disclosure except with the client's consent." *Lee National Corp. v. Deramus*, 313 F.Supp. 224, 226 (D.Del.1970). It bestows upon a client a privilege to refuse to disclose and to prevent others from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client. *See* McCormick, Evidence § 87 (2d ed. 1972); 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961).

■■ A client, nevertheless, may waive the privilege by deliberately injecting into the case the advice which he received from his attorney. *See Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 929 (N.D. Cal.1976); *Garfinkel v. Arcata National Corp.*, 64 F.R.D. 688, 689 (S.D.N.Y.1974); *Smith v. Bentley*, 9 F.R.D. 489, 490 (S.D.N. Y.1949). *See also* 8 Wigmore, Evidence § 2327 (McNaughton rev. 1961). It would be unfair to allow a client to assert the attorney-client privilege and prevent disclosure of damaging communications while allowing the client to disclose other selected communications solely for self-serving purposes. *See Handgards*, 413 F.Supp. at 929; *International Telephone and Telegraph Corp. v. United Telephone*, 60 F.R.D. 177, 185–86 (M.D.Fla.1973). Therefore, if a client chooses to disclose some privileged communications between the attorney and himself, then he waives the remainder of the communication which relate to the same subject matter. *See Haymes v. Smith*, 73 F.R.D. 572, 577 (W.D.N.Y.1976). *See also Handgards*, 413 F.Supp. at 929; *In re Penn Central Commercial Paper Litigation*, 61 F.R.D. 453, 464 (S.D.N.Y.1973); *Interna-*

**2.** Jurisdiction exists pursuant to 28 U.S.C. § 1338(a) and 35 U.S.C. § 281. Venue is proper under 28 U.S.C. § 1400(b).

**3.** References in this opinion to "communications between Smith and Zinn" will encompass those communications between Smith and/or his former alter ego Craftmaster Inc. ("Craftmaster"), and Zinn and/or any member of the Sughrue, Rothwell, Mion, Zinn & MacPeak law firm of Washington, D. C.

tional Telephone, 60 F.R.D. at 185–86; Lee National, 313 F.Supp. at 227.

■ Smith has identified thirty-six documents relating to the issue of infringement which were exchanged between Zinn and himself. See D.I. 21, letter dated February 4, 1982. Smith argues that these documents need not be produced pursuant to Alyeska and Sohio's discovery request because the documents are privileged communications. (D.I. 24.) Alyeska and Sohio, however, argue that Smith has waived the attorney-client privilege when Zinn, acting on behalf of Smith, voluntarily sent a copy of an opinion letter addressed to Smith dated February 12, 1975, to Alyeska advising that TAPS and Alyeska were infringing or would infringe the '233 Patent. (D.I. 28 at 2.)

Smith argues that the copy of the opinion letter sent to Alyeska "was born out of unusual circumstances where Craftmaster and Alyeska were trying to resolve the issue of infringement." (D.I. 24 at 6.) He notes that there would be no waiver of the attorney-client privilege if Mr. Zinn had taken the time to reproduce the text of the opinion letter to create another letter addressed solely to Alyeska. He maintains that to distinguish an opinion letter sent to a client from an identical letter sent to an adversary is to rely on form rather than substance. Smith, therefore, argues that the opinion letter addressed to Smith with a copy thereof sent to Alyeska cannot act as a waiver of the privilege. (Id.)

The Court disagrees. The form of the letter is of critical importance because of the relationship of the parties. There is a fundamental difference between a letter written to the client giving a balanced and objective presentation of the factual and legal issues and a letter written to the opposing party presenting the factual and legal position in an adversarial posture. If an adversary receives a letter from the opposing attorney which purports to be an opinion letter to an attorney's client, the adversary is more likely to give it greater weight and not discount the factual and legal propositions as being merely adversar-ial, as one may do when he receives a letter written for his adversary. Thus, there is a great deal of difference in the form of the letter because of the reliance by the adversary.

Smith secondly contends that if he has waived the attorney-client privilege, then such waiver is limited to those communications between Zinn and Smith from Sept. 18, 1973, the date the issue of infringement was first discussed, through February 13, 1975, the date the opinion letter was sent to Alyeska. (D.I. 24 at 7.) He maintains that he is not required to produce those documents created after the opinion letter which relate to the issue of infringement because those subsequent opinions are based on other information. (Id.) He relies upon Hercules, Inc. v. Exxon Corp., 434 F.Supp. 136 (D.Del.1977), Lee National Corp. v. Deramus, 313 F.Supp. 224, 225 (D.Del.1970), and International Business Machines, Inc. v. Sperry Rand Corp., 44 F.R.D. 10 (D.Del. 1968) to support this proposition.

In Hercules, the plaintiff objected to the defendant's discovery request on the grounds that the thirty-one documents sought by the defendant were protected by the attorney-client privilege. The defendant contended that the plaintiff had waived the privilege because the plaintiff had produced eighteen of the thirty-one documents. Although the documents were inadvertently produced, the court found that the plaintiff had voluntarily produced the documents, without limitation. It noted the well established principle that "voluntary waiver, without limitation, of one or more privileged documents passing between a certain attorney and the client discussing certain subject, waives the privilege as to all communications between the same attorney and the same client on the same subject." 434 F.Supp. at 156 (emphasis added). The court emphasized that the waiver exception has been narrowly construed and that the defendant waived the attorney-client privileges only to those documents which relate to the subject matter that was discussed in the disclosed documents. It found that most of the thirteen documents which defendants

sought produced did not discuss the same subject matter included in the produced documents. A few documents, however, did "overlap to some extent, but only very generally." The court concluded that these "overlapping documents" did not relate to the same subject in sufficient detail to warrant mandatory production. Thus, the court held that the thirteen documents need not be produced.

In *Lee National*, during an oral deposition, the plaintiff asked the corporate defendant whether it had consulted with counsel concerning proposed changes in the by-laws and the corporate charter, and if so, when the consultation took place and who attended the meetings. The defendant's attorney objected to any question that inquired into the specific subject matter of these consultations on the ground that the information sought was protected from disclosure by the attorney-client privilege. The defendant's attorney, nevertheless, instructed his client to disclose all of the dates he consulted with his attorney and those present during the consultation, but not to the specific dates in which he discussed the prospective changes in the by-laws and corporate charter with the attorney. 313 F.Supp. at 226. The plaintiff's attorney, who was seeking production, asserted that there was "no privilege with respect to the fact of having conversations with attorneys on the particular subject on particular days" *id.*, and that the timing of certain conversations between the corporation and the attorney were relevant to the lawsuit. The Court agreed with the defendant that parties are ordinarily protected from answering questions designed to disclose when a particular subject matter was discussed between an attorney and client, but found that the corporate client had waived the privilege when representatives of the defendant corporation had disclosed to the plaintiff that it had discussed with a corporate attorney prospective changes in the by-laws and corporate charter on specific dates. The Court held that once a corporate representative "disclosed that it had some confidential conversations with counsel relating to the by-law and charter

amendments, it could not refuse to identify, on the ground of privilege, other occasions when this particular subject matter was discussed with counsel." *Id.* at 227. Thus, the court ordered the corporation to disclose all instances when the corporation discussed changes in the by-laws and corporate charter with its counsel.

In *International Business Machines Corp. v. Sperry Rand Corp.*, 44 F.R.D. 10 (D.Del. 1968), the defendant, Sperry Rand, contended that all twenty-eight documents were protected from disclosure by the attorney-client privilege. The plaintiff, IBM, argued that Sperry Rand had waived the privilege as to all of these documents when it produced a letter dated August 26, 1949, while attempting to negotiate a settlement with another party and thus was entitled to all twenty-eight documents. The Court found that the production of the August 26, 1949 letter constituted only a limited waiver of the attorney-client privilege. The Court required Sperry Rand to produce only those documents which contained information relating to the subject matter discussed in the August 26, 1949 communication. It ordered Sperry Rand to produce portions of communications dated February 14, 1951, November 20, 1951, February 13, 1952, and May 23, 1952, which contained communications that otherwise would have been protected by the attorney-client privilege, even though these communications were subsequent to the disclosure of the document that waived the attorney-client privilege. *Id.* at 16.

Smith argues that if there has been a waiver, *Hercules, Lee National* and *IBM* require Smith to produce only those documents created *before* February 13, 1975, the date the opinion letter was sent from Zinn to Alyeska relating to the infringement of the '233 Patent. He contends that the disclosure of the opinion letter does not waive the attorney-client privilege for those documents created after February 13, 1975. (D.I. 24 at 7.) Neither *Hercules, Lee National*, nor *IBM* support Smith's assertion. The *Hercules* court found that the documents sought did not relate to the same subject matter disclosed in the documents

that had been produced. Therefore, none of the documents could qualify for the subject matter waiver and the court did not have the opportunity to decide whether a party could obtain documents created after the waiver. *Lee National* also does not provide support for Smith's proposition, as the court required the defendant to disclose all instances when the subject matter was discussed; it did not limit disclosure to those instances before the waiver. Nor does *IBM* provide support to Smith's proposition, as that court expressly ordered the defendant to produce all documents relating to the same subject matter, even though the documents were created after the waiver.

The Court will follow the principles enunciated in *Lee National* and *IBM* and will require Smith to produce all of the communications between Zinn and Smith which relate to Alyeska's infringement of the '233 Patent. The defendants seek the thirty-six documents identified by Smith on February 4, 1982 (*see* D.I. 21), and Smith has not asserted in this Court that any of these thirty-six documents contain any other privileged subject matter. Therefore, the Court holds that these thirty-six documents which were sent during the period between September 18, 1973 and February 24, 1976, must be produced.

## II. *Motion For Separate Trials of Liability and Damage Issues.*

■ Smith has requested Alyeska and Sohio to answer four interrogatories and to produce documents pursuant to Rules 33 and 34 of the F.R.Civ.P. *See* Plaintiff's Interrogatories Numbers 29 to 33 To Defendants (D.I. 11), and Plaintiff's Second Request to Defendants (D.I. 12). The answers and documents sought by Smith relate solely to the issues of damages which may arise after liability has been established. Alyeska and Sohio have moved the Court, pursuant to Rule 42(b), to order the issues of liability, such as patent validity, enforceability and infringement, to be tried separately from and prior to the trial of the issue of damages, if the trial of damages is found to be necessary. (D.I. 20.) In addition, Alyeska and Sohio have moved the Court to stay all proceedings, including discovery, which relate to the issues of damages until the trial on the issues of liability has terminated. (*Id.*) Alyeska and Sohio contend that the proposed bifurcated trial is in accordance with the usual patent litigation practice and that such procedure could result in substantial economies of time, effort and expense for the parties and the Court. *Id.*

Rule 42(b), F.R.Civ.P., provides:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross claim, counterclaim, or third party claim, or of any separate issue or of any number of claims, cross claims, counterclaims, third party claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States.

Motions to separate the issues of liability and damages are to be granted by the court on a case-by-case basis only when the separation will result in judicial economy and will not unduly prejudice any party. *See Lis v. Robert Packer Hospital*, 579 F.2d 819 (C.A. 3), *cert. denied*, 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 346 (1978); *Idzojtic v. Pennsylvania Railroad Co.*, 456 F.2d 1228 (C.A. 3, 1972).

The leading patent case where a jury was demanded and in which Rule 42(b) was applied is *Swofford v. B&W, Inc.*, 34 F.R.D. 15, 19–20 (S.D.Texas 1963), *aff'd*, 336 F.2d 406 (C.A. 5, 1964), *cert. denied*, 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965). In *Swofford*, the court articulated the unique circumstances present in a patent case which justifies a court to order separate trials of liability and of damages:

In the normal case separate trial of issues is seldom required, but in a patent infringement suit considerations exist which suggest that efficient judicial administration would be served by separate

trials on the issues of liability and damages. The trial of the damages question in such a suit is often difficult and expensive, while being easily severed from the trial of the questions of validity and infringement of the patent. A preliminary finding on the question of liability may well make unnecessary the damages inquiry, and thus result in substantial saving of time of the Court and counsel and reduction of expense to the parties. Moreover, separate trial of the issue of liability may present counsel the opportunity to obtain final settlement of that issue or appeal without having reached the often time-consuming and difficult damages question.

34 F.R.D. at 19–20. The Court of Appeals for the Fifth Circuit, when affirming the district court, noted that piecemeal litigation is generally not encouraged, but expressly approved of separation of the liability and damages issues when the separation will result in judicial economy. 336 F.2d at 415. The Fifth Circuit, however, stated that there is an important limitation on the court's power to separate the issues of liability and damages: "the issue to be tried must be so distinct and separable from the [other issues] that a trial of it alone may be had without injustice." *Id.* The court, nevertheless, stated *in dicta* that it could "not think of an instance in a patent action where the damage issue is so interwoven with the other issues that it [could] not be submitted to a jury independently of the others without confusion and uncertainty, which would amount to a denial of a fair trial."

Smith argues that Alyeska and Sohio have not shown that severance of the issue of damages will be conducive to the promotion of expedition and judicial economy, avoid prejudice or simplify the jury's task because the liability issues are so interwoven with the damage issues. (D.I. 25 at 4–5.) He also maintains that if there are two separate trials with two separate discovery periods, that this would greatly increase the

cost of "litigation which would thereby prejudice Smith, rather than Alyeska and Sohio." (*Id.* at 5.) Finally, he argues that separate trials would not simplify the jury's task nor promote judicial economy because the issues of liability and damages are not complex and will not thereby confuse the jury. (*Id.*)

Smith relies upon *Brad Ragan, Inc. v. Shrader's, Inc.*, 89 F.R.D. 548 (S.D.Ohio 1981), where the court denied the defendant's motion seeking separation or bifurcation of trial on the issues of liability and damages. In *Brad Ragan*, the defendant relied upon the general proposition that the issues of liability and damages are complex in patent cases and that separation was therefore warranted. The court found this general argument unpersuasive because of the plaintiff's representations that the damage issue did not involve complex factual issues and that "much of the proof on the liability issues would substantially overlap with its proof on damages." *Id.* at 550. Smith argues, as the *Brad Ragan* plaintiff argued, that the issues of liability are not complex because the patent in suit is not a complex invention. (D.I. 31 at 24.) Smith also argues that the damage issue is not complex because the award will be based upon a reasonable royalty. (*Id.*; D.I. 25 at 5.) Further, he asserts that he will use the same evidence to prove both the liability and damage issues, but acknowledges that Alyeska and Sohio may introduce additional evidence during the portion of the trial set aside for the damage issue. (D.I. 31 at 24–25.)

◼ This Court finds that *Brad Ragan* is not applicable because the issue of damages is complex and that the issues of liability and damages do not overlap.[4] Unlike *Brad Ragan*, Alyeska and Sohio do not rely on the general proposition that the damage issue is complex but expressly represented to the Court that to resolve the damage issue will require a review of millions of

---

4. *See* text at 984–986, *infra* for a discussion that the liability and damages issues do not overlap.

documents and require extensive time both during discovery and at trial.[5] The Court, therefore, finds that one trial of both issues would tend to clutter the record and to confuse the jury. Further, if any of the liability issues are resolved in Alyeska and Sohio's favor, no further trial will be necessary. On the other hand, if the liability issues are resolved in Smith's favor, then Alyeska and Sohio might very well settle the damages to avoid the lengthy trial. Therefore, the Court will follow *Swofford, supra; Naxon Telesign Corp. v. GTE Information Systems,* 89 F.R.D. 333 (N.D.Ill. 1980); *Kushner v. Hendon Construction, Inc.,* 81 F.R.D. 93 (M.D.Pa.), *aff'd,* 609 F.2d 501–02 (C.A. 3, 1979); and *Shepard v. International Business Machines, Corp.,* 45 F.R.D. 536 (S.D.N.Y.1968), and hold that there will be a separate trial of the issues of liability and damages.

Alyeska and Sohio have also moved the Court, pursuant to Rule 42(b), to stay all proceedings, including discovery, which relate to the issues of damages until the trial on the issues of liability has terminated. As previously noted, Rule 42(b) provides the court with the power "in furtherance of convenience or . . . when separate trials will be conducive to expedition and economy . . . [to] order a separate trial . . . of any separate issue or issues." It is also implicit that the court has the power to limit discovery to the segregated cases. *Ellingson Timber Co. v. Great Northern Railway Co.,* 424 F.2d 497 (C.A. 9), *cert. denied,* 400 U.S. 957, 91 S.Ct. 354, 27 L.Ed.2d 265 (1970). If there are two distinct discovery periods, then there will be two different juries in this case. The Court thus must determine whether this type of separation is constitutionally permissible.

The Seventh Amendment to the United States Constitution provides:

In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.

The central inquiry is whether the issues heard by the second jury ("the damage jury") will be so distinct and independent from those issues heard by the first jury ("the liability jury"). *See Gasoline Products Co. v. Champlin Refining Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931). Two juries cannot decide factual questions that are common to both trials and which are essential to a verdict or an award. Factual questions resolved by one jury which could be reexamined by another jury, either directly or indirectly, violates the Seventh Amendment. *Id.*

Various courts have discussed the Seventh Amendment insofar as it relates to separate trials and separate issues. In *Gasoline Products v. Champlin Refining Co.,* 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931), a jury in the District Court returned a verdict for the plaintiff on the plaintiff's cause of action and a verdict for defendant on its counterclaim, leaving a balance in plaintiff's favor for which the District Court gave judgment. The Court of Appeals for the First Circuit reversed and remanded the verdict on the defendant's counterclaim because it found an error in the charge of the trial court with respect to the measure of damages. It restricted the remand to the determination of the damage issue alone. Thus, a second jury would hear the damage issue, but would not hear the other issues relating to either the plaintiff's cause of action or the defendant's counterclaim. The Supreme Court found that the plaintiff's cause of action was clearly separable from the defendant's counterclaim because the issues did not overlap and thus held that the first jury's verdict should not be disturbed insofar as the plaintiff's cause of action. Neverthe-

---

5. At oral argument, counsel for the defendants noted that the Federal Energy Regulatory Commission ("FERC") has been attempting to determine the total cost of the Pipeline. The eight-man staff, on a full time basis, have been working for over two years. Defendants represent to the Court that the total cost of the Pipeline "is only one small part of what the plaintiffs [sic] in this case want to undertake now." (D.I. 31 at 10–11.)

less, it found that the damage issue arising from the defendant's counterclaim was not distinct and independent from those liability issues arising from the defendant's counterclaim:

> [T]he jury cannot fix the amount of damages unless also advised of the terms of the contract; and the dates of formation and breach may be material, since it will be open to petitioner to insist upon the duty of respondent to minimize damages.
>
> \* \* \* \* \* \*
>
> Here the question of damages on the counterclaim is so interwoven with that of liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to denial of a fair trial.

*Id.* at 499, 500, 51 S.Ct. at 514–15. Thus, the Court held that there should be a new trial of all the issues raised by the defendant's counterclaim.

In *United Air Lines Inc. v. Wiener*, 286 F.2d 302 (C.A. 9), *cert. denied*, 366 U.S. 924, 81 S.Ct. 1352, 6 L.Ed.2d 384 (1961), there was a midair collision resulting in twenty-three cases filed in the District Court. The District Court ordered that all of the cases be consolidated on the issue of liability only, and that the questions of damages be tried by separate juries. The Court of Appeals for the Ninth Circuit held that the District Court order could not withstand Seventh Amendment scrutiny. The court reasoned that if the trial were separated so that there would be different juries for the liability and damage issues, the juries would hear similar evidence and decide similar issues. This was so because the jury deciding the liability issue would be required to decide whether the defendant was negligent and the second jury deciding the damage issues would be required to decide the degree of culpability—that is, the degree of negligence. Therefore, both juries would be hearing evidence relating to negligence. The Ninth Circuit thus found that "[T]he question of damages [was] so interwoven with that of liability that the former [could not] be submitted to the jury independently

of the latter without confusion and uncertainty which would amount to a denial of a fair trial." *Id.* at 306.

In *Master Key Antitrust Litigation*, 70 F.R.D. 23 (D.Conn.1975), the plaintiffs, after consolidation of several antitrust suits, requested that the issues of liability and damages be separated pursuant to Rule 42(b). The defendants objected on the ground that "separate trials as requested by the plaintiffs would simply involve duplicative introduction of damage evidence" and that such procedure would violate the Seventh Amendment. The Court found that the issues of liability and damages were distinct and independent and that the Seventh Amendment was not violated:

> The constitutional question turns on whether "the issue to be [tried to a second jury] is so distinct and separate from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed.2d 1188, 1191 (1931). Here the distinctness of the damage issue seems clear. At the liability stage it will be determined whether the defendants' conduct included violations of the antitrust laws and whether it affected prices. The proof of the alleged conspiracy and of liability to the plaintiffs will be possible without detailed reference to damages . . . . Similarly, proof of damages suffered will be what the plaintiffs paid for their master key systems and what they would have paid if the defendants had refrained from specific conduct found to be illegal. Thus, I find the defendants' constitutional objections unpersuasive and order that separate trials be held on the issues of liability and damages.

*Id.* at 29.

Contrasting *Gasoline Products* and *United Air, Master Key* found that the liability and damage issues were distinct and not interwoven and thereby held that two separate juries could constitutionally hear the liability and damage issues separately. This Court, thus, must make a determination whether the separation of the trial will

require two juries to resolve issues that are interwoven. The factual questions presented to the jury determining the liability issues will include whether the '233 Patent is valid and enforceable, and whether Alyeska and Sohio has infringed the '233 Patent. The factual questions presented to the jury hearing the damage issues, however, may include what are the costs of TAPS, what was the proportional cost of the leak prevention system, and what profits are Alyeska and Sohio earning from TAPS? (*See* D.I. 31 at 18.) Neither of these factual questions overlap. One aspect of the damage trial, the determination of treble damages, however, may present issues which will overlap with the liability issues.

A patent owner is entitled to treble damages in a patent infringement action where the defendant has knowingly, deliberately, intentionally, wilfully, or wantonly infringed the patent. *See Sims v. Mack Trucks, Inc.*, 459 F.Supp. 1198, 1219 (E.D.Pa.1978), *rev'd on other grounds*, 608 F.2d 87 (C.A.3), *cert. denied*, 445 U.S. 930, 100 S.Ct. 1319, 63 L.Ed.2d 764 (1980); *Jenn-Air Corp. v. Penn Ventilator Co.*, 394 F.Supp. 665, 676 (E.D.Pa.1975); 35 U.S.C. § 284 (1976). If the treble damages were to be determined by the jury, then the rationale in *United Air* would be applicable and the Seventh Amendment would prohibit the separation of the trial because the liability and damage issues would be interwoven—the first jury would determine whether Alyeska and Sohio infringed the patent and the second jury would determine the state of mind of Alyeska and Sohio when they infringed the patent. Thus, the damage jury would have to pass over many of the same issues that were presented to the liability jury to determine the defendants' state of mind. Treble damages in patent cases, however, are not determined by the jury, but are determined solely by the Court. *See Birdsall v. Coolidge*, 93 U.S. 64, 70, 23 L.Ed. 802 (1876); *White v. Mar-Bel Inc.*, 509 F.2d 287, 292 (C.A. 5, 1975); 8 Walker on Patents § 757 (Deller's 2d ed. 1973). The damage jury cannot award treble damages and thereby will not need to hear those facts surrounding the liability

issue. The liability and damage issues will remain distinct and independent, therefore, separation of the issues will not violate the Seventh Amendment.

An order will be entered in accordance with this opinion.