**PRINCETON BIOCHEMICALS, INC., Plaintiff,**

v.

**BECKMAN INSTRUMENTS, INC., Defendant.**

Civ.A. No. 96–5541(MLP).

United States District Court, D. New Jersey.

March 27, 1997.

Mark D. Schorr, Sterns & Weinroth, Trenton, NJ, for Plaintiff.

Nola R. Bencze, Jamieson, Moore, Peskin & Spicer, Princeton, NJ, for Defendant.

MEMORANDUM

WOLFSON, United States Magistrate Judge.

Presently before the Court is the motion by defendant, Beckman Instruments, Inc., seeking to bifurcate trial and discovery on the issues of liability, damages, and willful infringement, pursuant to *Fed.R.Civ.P.* 42(b). The Court has reviewed the moving, opposition, and reply papers, and heard oral argument from counsel on March 3, 1997. For the reasons which follow, defendant's motion is granted.

## Background

Plaintiff, Princeton Biochemical, filed this patent infringement action against defendant, Beckman Instruments, alleging, *inter alia,* that defendant unlawfully infringed upon its patent, U.S. Patent No. 5,045,172, "by making, using and/or selling P/ACE capillary electrophoresis apparatus which incorporate the patented invention." Complaint at ¶ 5. In response, defendant denies any such infringement and, instead, asserts that plaintiff's claim of infringement is barred by acquiescence, laches, and estoppel, and additionally, that plaintiff's patent is invalid for lack of novelty, obviousness, and failure to comply with the patent application requirements of 35 U.S.C. § 112. Answer, "Claims for Relief" at ¶¶ 4–5 and "Affirmative Defenses" at ¶ 7. Hence, defendant seeks a declaratory judgment that it did not infringe on plaintiff's patent. Answer, "Counterclaims" at ¶¶ 5–11.

Defendant brings the present motion seeking to bifurcate this matter into two stages— a liability phase and, if necessary, a subsequent determination of willfulness and damages. Defendant's Brief at 1. In conjunction with this request, defendant seeks a stay of discovery on the willfulness and damages issues if its motion to bifurcate is granted. *Id.*

Defendant suggests that bifurcation is warranted, for several reasons. First, defendant claims that the liability issues alone are extremely complex. *Id.* at 1–5. Consequently, defendant contends that adjudicating these issues, together with the complex damages issues, in one lengthy trial would likely overwhelm the jury. *Id.* at 5–7.

Second, defendant insists that separate trials would further the convenience of the parties, witnesses, court and jurors. *Id.* at 10–11. Not only would a successful trial of the liability issues avoid the need for a trial on damages altogether, but, defendant argues, bifurcation would make it easier for the jurors to grasp the issues, and would facilitate a more productive and efficient discovery process. *Id.*

Third, because separate trials would circumvent potential juror problems of confusion and make the case more manageable, defendants submit that it would thereby avoid possible prejudice to both parties. *Id.* at 11. In addition, separation of the issues would also, arguably, minimize both delay and expense. *Id.* at 11–13. If the issue of damages is deferred until after liability is determined, the parties could avert unnecessary delays in the discovery process of the damages issues, and proceed to trial on the potentially dispositive issue of liability. *Id.* Accordingly, if liability is found, the parties could then minimize expense by negotiating a possible settlement. *Id.* In the alternative, if the jury finds no liability, the expense associated with the litigation of the damages and willfulness issues can be avoided altogether. *Id.*

Defendant argues that this approach would avoid duplication of effort since the issues of liability and damages are distinct and separate. *Id.* at 12. Specifically, defendant contends that the scope of the liability trial will be limited to the structure and operation of the accused device, while the damages trial would require proof of sales, costing factors, profit levels and offsetting costs. *Id.*

Finally, in light of potential *Quantum*-type concerns, defendant insists that the determination of willfulness is more appropriately resolved in the damages phase of the litigation. Defendant's Brief at 13–15 (relying upon *Quantum Corp. v. Tandon Corp.,* 940 F.2d 642, 643 (Fed.Cir.1991)). In particular, defendant submits that if the willfulness issue is tried during the liability trial, Beckman may be compelled to choose between the lawful assertion of its attorney-client privilege and a strong defense to the charge of willfulness. *Id.* at 14. Hence, defendant urges this Court to bifurcate the issue of liability from the determination of willfulness and damages. Additionally, in an effort to avoid costly and potentially unnecessary work, defendant requests that this Court stay discovery of these bifurcated issues until after a final determination as to liability.

Conversely, plaintiff opposes this motion, arguing that economy and efficiency militate towards litigating this "simple" patent infringement charge in one single trial. Plaintiff's Brief at 1. Moreover, because there are

overlapping proofs common to both liability and damages, plaintiff suggests that it would be illogical and duplicative to maintain two separate discovery and trial processes. *Id.* at 7–9. In addition, plaintiff further proposes that willful infringement is a liability rather than a damages issue, and thus, must be tried with liability. *Id.* at 10–13 (citing *Keyes Fibre Co. v. Packaging Corp. of America,* 763 F.Supp. 374, 375 (N.D.Ill.1991); *Kimberly–Clark Corp. v. James River Corp.,* 131 F.R.D. 607, 609 (N.D.Ga.1989); *Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.,* 13 U.S.P.Q.2d 1737, 1741, 1989 WL 169006 (D.Mass.1989); *American Standard, Inc. v. Pfizer, Inc.,* 722 F.Supp. 86, 90 and 106–08 (D.Del.1989)). Consequently, plaintiff contends that bifurcation, and a concomitant stay of discovery as to willfulness and damages, is not appropriate.

### Discussion

■ Rule 42(a) of the Federal Rules of Civil Procedure empowers this Court to bifurcate a trial if such an action would be "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy." Accordingly, a bifurcated trial may be considered inappropriate if it would result in duplication of effort, undue delay or expense, or inconvenience. *Remcor Products Co. v. Servend International, Inc.,* 1994 WL 594723 at *2 (N.D.Ill., Oct. 28, 1994). The party seeking bifurcation has the burden of demonstrating that judicial economy would be promoted and that no party would be prejudiced by separate trials. *Spectra–Physics Lasers, Inc. v. Uniphase Corp.,* 144 F.R.D. 99, 101 (N.D.Cal.1992). Bifurcation issues must therefore be resolved upon the specific circumstances of each case. *Dentsply International, Inc. v. Kaydex,* 1994 WL 376276 at *1 (N.D.Ill., July 11, 1994). This decision is left to the sound discretion of the Court. *Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1209, 1212 (Fed.Cir.1987); *Lis v. Robert Packer Hospital,* 579 F.2d 819 (3d Cir.1978), *cert. denied,* 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 346 (1978); *Idzojtic v. Pennsylvania R. Co.,* 456 F.2d 1228, 1230 (3d Cir.1972).

### 1. Bifurcation of Liability and Damages is Appropriate

■ Federal precedent suggests that the entire damages phase of patent litigation could be severed from issues of liability, upon a finding that the damages issues are complicated and extensive evidence would be necessary on these issues. *See Spectra–Physics Lasers, Inc. v. Uniphase Corp.,* 144 F.R.D. 99, 101 (N.D.Cal.1992); *Johns Hopkins Univ. v. Cellpro,* 1995 WL 65572 at *5 (D.Del., Feb. 6, 1995).

Courts have found that concerns of prejudice, complexity, expedition, and judicial economy are particularly significant in patent cases:

> In the normal case separate trial of issues is seldom required, but in a patent infringement suit considerations exist which suggest that efficient judicial administration would be served by separate trials on the issues of liability and damages. The trial of the damages question in such a suit is often difficult and expensive, while being easily severed from the trial of the questions of validity and infringement of the patent. A preliminary finding on the question of liability may well make unnecessary the damages inquiry, and thus result in substantial saving of time of the Court and counsel and reduction of expense to the parties. Moreover, separate trial of the issue of liability may present counsel the opportunity to obtain final settlement of that issue or appeal without having reached the often time-consuming and difficult damages question.

*Smith v. Alyeska Pipeline Serv. Co.,* 538 F.Supp. 977, 982–83 (D.Del.1982), *aff'd,* 758 F.2d 668 (Fed.Cir.1984), *cert. denied,* 471 U.S. 1066, 105 S.Ct. 2142, 85 L.Ed.2d 499 (1985) (quoting *Swofford v. B & W, Inc.,* 34 F.R.D. 15, 19–20 (S.D.Tex.1963), *aff'd,* 336 F.2d 406 (5th Cir.1964), *cert. denied,* 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965)).

The Fifth Circuit, in affirming a lower court decision which bifurcated the liability and damages issues, found that the only practical limitation on the court's power to separate these matters is that "the issue to be tried must be so distinct and separable from the [other issues] that a trial of it alone

may be had without injustice." *Swofford,* 336 F.2d at 415. Notwithstanding this important caveat, the Fifth Circuit revealed, *in dicta,* that it could "not think of an instance in a patent action where the damage issue is so interwoven with the other issues that it [could] not be submitted to a jury independently of the others without confusion and uncertainty, which would amount to a denial of a fair trial." *Id.; see also B. Braun Medical Inc. v. Abbott Laboratories,* 32 U.S.P.Q.2d 1211, 1215 (E.D.Pa.1994) (quoting *Swofford,* 336 F.2d at 415) (it is appropriate to separate "the issues of validity, title, infringement and damages in patent and copyright cases ... unless this course will inconvenience the court or seriously prejudice the rights of some of the parties").

In *Smith, supra,* the Delaware district court, recognizing that resolution of the damages issues would require an extensive review of millions of documents, found that one trial of both liability and damages issues would "clutter the record" and "confuse the jury". *Smith,* 538 F.Supp. at 984. Hence, to accommodate these overwhelming concerns, that court was compelled to order separate trials. *Id.; see also B. Braun,* 32 U.S.P.Q.2d at 1215 (holding that a "jury will [likely] become confused if required to consume this [voluminous, complex] amount of information at one time") and *Eaton Corp. v. Auburn Gear, Inc.,* 8 U.S.P.Q.2d 1373, 1374–75, 1988 WL 273448 (N.D.Ind.1988) (concluding that it makes sense to bifurcate due to the complexity of the damage issues which involve complex calculations of reasonable royalties and lost profits).

Alternatively, bifurcation is not warranted where "separate trials would not promote the interests expressed in Rule 42." *Keyes Fibre Company v. Packaging Corporation of America,* 763 F.Supp. 374, 375 (N.D.Ill.1991). Particularly, in *Keyes,* the Illinois district court suggested that in circumstances where the parties will present overlapping evidence, relevant to both liability and damages, the issues should not be severed. *Id.* at 375–76. In addition, the *Keyes* court noted that because the patent case was to be adjudicated in a bench trial, rather than a jury trial, "the type of prejudice that stems from jury confusion is not equally present." *Id.* at 376. Hence, in that case, the court concluded that "there [was] no real threat of prejudice," which justified bifurcating the issues of liability and damages. *Id.*

In the instant case, while plaintiff does not dispute the standard incorporated in Rule 42, it contends that defendant has failed to sufficiently satisfy the requirements for bifurcation. This Court disagrees. On the contrary, this Court is convinced that both the liability and damages issues in this patent infringement case are complex. Even plaintiff's most simplistic assessment of the underlying technology and the liability issues in question are likely to be confusing to a jury, unsophisticated in the area of intellectual property.[1]

While, on the one hand, plaintiff insists that the entire liability case will be reduced to a determination of whether or not there is a holder in the accused product (i.e. claim 32), its Complaint asserts 40 claims of in-

---

1. Plaintiff insists that the instant matter is a relatively simple patent case. Although matters could change, Princeton presently asserts infringement of a single patent claim. While the underlying technology can be complicated, the proofs required for infringement are not. The accused devices are known as capillary electrophoresis systems which are used to separate large and small molecules in chemical or biological samples undergoing analysis. At the heart of each system is an interchangeable cartridge cassette not unlike those used in stereo and video equipment.

The cartridge houses a thin capillary tube equipped with an optical viewing window that cooperates with a detector. Sample solutions and other necessary fluids are placed in vials (cups) positioned beneath inlet and outlet ends of the capillary tube. When voltage is applied to the capillary, molecular components migrate through the tube at different rates, and physically separate. As the molecules pass the viewing window, they are monitored by a UV detector which transmits an absorbance signal to a recorder. The absorbance values are plotted as peaks which supply the analytical information about the sample.

The physical phenomena which explain capillary electrophoresis will form no part of the infringement analysis. In fact, the infringement issue will largely depend on whether Beckman's accused devices have a "holder" for keeping an end of the capillary tube in close proximity to one of the sample cups. Plaintiff's Brief at 1–3 (footnotes omitted).

fringement.[2] *See* Complaint, Exhibit A at 15–24; Transcript of Oral Argument (March 3, 1997) at 11. Although this Court recognizes, based upon the prevailing case law, *see, e.g., Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1220 (Fed.Cir.1995) and *Panduit Corp. v. Dennison Mfg. Co., Inc.*, 836 F.2d 1329, 1330 (Fed.Cir.1987), that plaintiff need only prove infringement of one claim in order to prevail on the merits, plaintiff will likely present evidence at trial on more than one claim so as to attempt to ensure a successful result. Consequently, the jury will likely be required to process volumes of exhibits, including diagrams, drawings, documents, models, as well as trial testimony, on the issue of liability alone. This task would surely be overwhelming to even the most sophisticated jurors. As such, the complexity of the liability issues as well as the resulting potential threat of prejudice due to jury confusion, present a controversy ripe for bifurcation.

In addition, this Court finds that there is no significant overlap of issues, which would result in a duplication of effort in the event that the determination of liability and damages were severed. At oral argument, plaintiff's counsel represented that bifurcation was particularly inappropriate because there are two issues—willfulness and commercial success—which pertain to both liability and damages. As a result, plaintiff contends that bifurcation would foster duplication of effort, inefficiency, and needless expense.

■ Upon further inquiry, however, this Court is not drawn to plaintiff's conclusions. First, whether willful infringement is a liability or damages determination is a disputed issue in this case. Plaintiff contends it should be tried with liability issues, while defendant suggests that it should be adjudicated in the damages phase of the litigation due to *Quantum*-type concerns. This Court is persuaded by the more recent case law which holds that willful infringement is more appropriately determined after liability has been established, thereby avoiding even the possibility of prejudice to a patent defendant's litigation rights. *See B. Braun*, 32 U.S.P.Q.2d at 1215 (holding that "judicial convenience will be served by trying damages and willfulness separately from liability"); *see also Johns Hopkins University v. Cellpro*, 160 F.R.D. 30, 33 and 36 (D.Del. 1995). In effect, these cases find, and this Court agrees, that a determination regarding patent infringement, does not require a detailed inquiry into the elements of willful infringement.[3] While some overlap is possible, plaintiff's argument that willful infringement substantially overlaps liability and damages issues is unconvincing.

Plaintiff's alternative ground for overlap—commercial success—is similarly lack-

**2.** It is also important to note that, during oral argument on this motion, plaintiff's counsel was not willing to definitively reduce his case to claim 32 and eliminate all other claims from its Complaint. Instead, plaintiff merely clarified that claim 32 is the only claim believed to be in issue at this time. Hence, the potential to further complicate the fundamental aspects of the liability case remains open. Transcript of Oral Argument (March 3, 1997) at 11.

**3.** Indeed, patent infringement generally requires proof that an individual or entity, without authority makes, uses, offers to sell, sells or imports the patented invention within the United States, its territories, or its possessions during the term of the patent, *see* 35 U.S.C. § 271(a), while a determination of willful infringement focuses on the intent of the infringer. Hence, in assessing liability for the principal offense of patent infringement, courts need not conduct an in-depth analysis of the accused infringer's state of mind.

Plaintiff, however, seeks to bridge a nexus between these two distinct causes of action by suggesting that there is an overlap. Plaintiff has characterized the inter-relationship as follows: defendant has challenged the validity of the patent in suit as "obvious" and therefore invalid. Thus, since the Supreme Court and the Federal Circuit have held that copying (or, as plaintiff concludes, willful infringement) is strong evidence of non-obviousness, willful infringement is intertwined with the liability issues in question. *See* Plaintiff's Brief at 12–13 citing *Diamond Rubber Co. v. Consolidated Rubber Tire Co.*, 220 U.S. 428, 441, 31 S.Ct. 444, 55 L.Ed. 527 (1911) and *Panduit Corp. v. Dennison Mfg. Co.*, 774 F.2d 1082, 1099 (Fed.Cir.1985). However, plaintiff's inference that copying is synonymous with willful infringement, is erroneous. Instead, copying is merely evidence of willful infringement. *See* Herbert F. Schwartz, Patent Law and Practice at 120 n. 654 (2d ed.1995). Consequently, plaintiff may pursue a "copying" defense to non-obviousness and indeed, a determination on this issue in this liability case could be a finding which need not be proven and presented to a jury a second time at a willfulness trial.

ing. Plaintiff contends that, in pursuing its infringement claim, it will inevitably be required to prove defendant's commercial success.[4] However, at oral argument, defendants have agreed to stipulate as to the commercial success of its products, thereby conceding this issue to plaintiff. *See* Transcript of Oral Arguments (March 3, 1997) at 8–9. Moreover, defendant will produce basic sales information regarding quantities sold. Defendant's Brief at 13. In any event, "[t]he question of commercial success is not ordinarily determined by a detailed analysis of exhaustive and intricate financial data, such as is required for proof of damages." *Paine, Webber, Jackson & Curtis, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 587 F.Supp. 1112, 1116 (D.Del. 1984). Hence, there is no significant overlap of evidence which would impede bifurcation.

Moreover, bifurcation will encourage judicial economy and efficiency, in light of the complexity of the damage issues. Here, plaintiff concedes that it has realized little commercial success. Defendant, on the other hand, is a multi-million dollar corporation, which claims to possess significant commercial success. Consequently, litigating the damages issues, including those relating to commercial sales and reasonable royalties, in one suit, would place an onerous burden upon defendant, not plaintiff, to produce, purportedly, millions of documents concerning the damages issues, which may ultimately prove unnecessary if no liability is found or if a settlement is reached.[5] More importantly, a liability trial will define the parameters of the allegedly infringing product, i.e., whether it is simply the "holder" component or whether it includes numerous devices. Following such a determination, defendant could produce its financial records concerning the devices actually adjudicated in issue rather than what it categorizes as the "multi-million dollar product lines" presently being sought by plaintiff. Defendant's Reply Brief at 3. Thus, both the parties, as well as the Court, would inevitably be required to invest valuable time and effort to litigate potentially unnecessary issues if damages discovery and trial were to go forward now. In codifying a provision in the Federal Rules permitting bifurcation, Congress attempted to obviate the need for such potentially fruitless endeavors. *See Fed.R.Civ.P.* 42(b).

Finally, while this Court recognizes that bifurcation is not liberally granted, *see Kimberly–Clark Corp.*, 131 F.R.D. at 608, it is at the same time not as uncommon as plaintiff suggests. Indeed, plaintiff even points to an abundance of patent cases in which the court permitted bifurcation of the liability and damages issues. *See* Plaintiff's Brief at 11–12 (citing *Amgen, Inc. v. Chugai Pharmaceutical Co. Ltd.*, 13 U.S.P.Q.2d 1737, 1741, 1989 WL 169006 (D.Mass.1989); *American Standard Inc. v. Pfizer, Inc.*, 722 F.Supp. 86, 90 (D.Del.1989); *E.I. Du Pont De Nemours & Co. v. Phillips Petroleum Company*, 656 F.Supp. 1343, 1346 (D.Del.1987)) (add'l citations omitted). Furthermore, since defendant has agreed to produce its sales information to plaintiff, despite a stay of damages discovery, plaintiff will be equipped to evaluate this case for settlement even at the liability phase, as well as demonstrate the commercial success of this invention. Thus, there is no definable prejudice to plaintiff.

---

4. Defendant has challenged the validity of plaintiff's patent for failure to comply with the patent application requirements of 35 U.S.C. § 112, which require that the patented invention be novel and non-obvious. In defense of this claim, plaintiff must prove that the invention was non-obvious. *See* 35 U.S.C.A. § 103. Among the criteria that underlie a proper analysis of non-obviousness is the secondary consideration of defendant's commercial success, if relevant. *See Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Once commercial success is proven, all other details (i.e. actual sales, profitability, etc.) are relegated to the issue of damages.

5. A damage determination of reasonable royalties alone, would require an extensive evaluation of several factors. *See Georgia–Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y.1970), *modified*, 446 F.2d 295 (2d Cir.1971), *cert. denied*, 404 U.S. 870, 92 S.Ct. 105, 30 L.Ed.2d 114 (1971) (court identifies fifteen different topics as a basis for evaluating a reasonable royalty); *See also SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1168 (Fed.Cir.1991).

260

Accordingly, this Court finds that, under the circumstances presented in this case, bifurcation is appropriate.

## 2. Willfulness Should be Adjudicated After the Liability Phase

■ There has been a recent wave of cases in patent litigation addressing the question of whether it is appropriate to bifurcate the issues of liability and willfulness when the alleged infringer asserts that it has a written opinion offered by its counsel supporting its actions. *See, e.g., Johns Hopkins Univ. v. Cellpro*, 160 F.R.D. at 33. The nature of the dilemma was set out by the Federal Circuit in *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 643–44 (Fed.Cir.1991). The court stated:

An accused infringer ... should not, without the trial court's careful consideration, be forced to choose between waiving the privilege in order to protect itself from a willingness finding, in which case it may risk prejudicing itself on the question of liability, and maintaining the privilege, in which case it may risk being found to be a willful infringer if liability is found. Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court, *in camera*, reveal that the defendant is indeed confronted with this dilemma.[6]

As Judge Sarokin recently stated in *Neorx Corp. v. Immunomedics, Inc.*, 28 U.S.P.Q.2d 1395, 1993 WL 592531 (D.N.J.1993), a court faced with this issue must make an *in camera* review of the written opinion in question in order to determine whether disclosure would, in fact, prejudice the alleged infringing party on the issue of liability. If such prejudice did exist, then the court could order that the issue of willfulness be severed for discovery and/or trial. *Id.* at 1397. Judge Sarokin noted that even if the Court did identify potential prejudice, a bifurcation motion could still be denied based upon other considerations such as unnecessary expense

and delay, duplication of evidence, and prejudice to another party. *Id.* at 1397 n. 4. In addition, a court could decide to direct disclosure of the attorney opinion, but also order a "two-phased trial before the same jury, with infringement addressed in the first phase and willfulness in the second phase." *Id.* at 1397 n. 5.

The *Neorx* opinion clearly provides that upon conducting this inquiry, the Court may make a determination that the alleged infringing party would be prejudiced by disclosure only if the nature of the documents reviewed by the Court support such a conclusion. *See also Johns Hopkins Univ. v. Cellpro*, 1995 WL 65572 at *5 ("Trial courts thus should give serious consideration to a separate trial on willfulness whenever the particular attorney-client communications, once inspected by the court *in camera*, reveal that the defendant is indeed confronted with this dilemma.").

Having already determined that the instant case should be bifurcated, and thereby finding that there is no significant overlap between issues of liability for patent infringement and willfulness, the issues pertaining to willful infringement are logically reserved for adjudication after liability has been determined. Consequently, this Court need not decide whether there is a *Quantum* dilemma. Instead, this Court has averted any possibility of prejudice to defendant by reserving the question of willfulness pending a finding of liability.

## 3. Discovery Regarding Willfulness and Damages is Stayed Until After Liability Is Established

In light of the aforementioned concerns regarding the potentially unnecessary expense and effort involved in adjudicating the willfulness and damages issues before a finding of liability, this Court will stay the discovery on these issues for the same reasons. *See supra*, at 258–59; *see also, e.g., Slater Electric, Inc. v. Indian Head, Inc.*, 223 U.S.P.Q. 729, 732, 1983 WL 52356 (S.D.N.Y.

---

**6.** More specifically, the *Quantum* decision was intended to address situations where one of the parties is charged with both patent infringement and willful infringement. As a defense to willful infringement, the accused infringer can assert that he relied upon the reasonable advice of

counsel. However, in doing so, the accused would, effectively, have to waive his attorney-client privilege. Yet, courts are reluctant to strip litigants of this fundamental privilege. Hence, the *Quantum* dilemma.

1983) *B. Braun*, 32 U.S.P.Q.2d at 1216 (the courts, as matter of course, stayed discovery of the bifurcated issues). In particular, this Court finds no reason to order defendant to expend tremendous efforts and funds to produce volumes of documents concerning issues of damages and willfulness prior to a finding of liability.

### Conclusion

Based upon the foregoing, defendant's motion to bifurcate the trial on liability from a trial on willfulness and damages is granted. Accordingly, this Court will stay discovery of these issues until after a final determination of liability. An appropriate Order shall follow.