INTERNATIONAL BUSINESS MA-
CHINES CORPORATION

v.

SPERRY RAND CORPORATION.

Misc. No. 40.

United States District Court
D. Delaware.

March 7, 1968.

See also D.C., 44 F.R.D. 7.

Clair John Killoran, of Killoran & Van Brunt, Wilmington, Del., for International Business Machines Corp.; Martin G. Reiffin, Hopewell Junction, N. Y., of counsel.

Januar D. Bove, Jr., of Connolly, Bove & Lodge, Wilmington, Del., for Sperry Rand Corp.; Thomas M. Ferrill, Jr., Philadelphia, Pa., Sheldon Kapustin, Blue Bell, Pa., of counsel.

## OPINION

LAYTON, District Judge.

The parties now before the Court are the litigants before the Board of Patent Interferences in Interference No. 93,544. Pursuant to Title 35 U.S.C. § 24, and Rules 34 and 37(b) of the Federal Rules of Civil Procedure, International Business Machines (IBM) has filed motions for the production of certain documents held by Sperry Rand Corporation (Sperry) and for sanctions against Sperry should it fail to comply with the order of the Court. The documents involved here were the subject of a similar motion presented to this Court in October, 1967, at which time Sperry was ordered to produce documents in ten broad categories, inclusive of the documents now sought. Production was ordered subject to the following proviso:

"(4) If Sperry contends that some of the material which it is required to

produce under the terms of this order is privileged, it may, in lieu of producing such material to IBM, fully identify such material in writing to IBM, and if IBM disagrees with Sperry's contention the matter may be submitted to this Court for its determination."

The documents that IBM now seeks fall into two narrow groups. Group I is composed of twenty-eight letters which Sperry contends are privileged; Group II, of materials which Sperry has been unable to locate or which it contends never existed.

In a letter to IBM dated January 2, 1968, Sperry identified twenty-eight documents which it contends are privileged as confidential communication between attorney and client. IBM contests Sperry's claim of privilege arguing that the communications were not intended to be confidential, that they were in fact disclosed to a third party, and that the privilege was waived by Sperry when it produced a portion of the letters between client and counsel. The letters in question were submitted to the Court for *in camera* inspection.

 In United States v. United Shoe Machinery Corporation, 89 F.Supp. 357 (Mass., 1950), generally regarded as the leading case in this field, Judge Wyzanski set forth the requisites of a justified claim of the attorney-client privilege:

"The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the pres-

ence of strangers (c) for the purpose of securing primarily either (i) an opinion on law (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

The requirement that the communication be made "without the presence of strangers" means that the communication must have been intended as confidential; i. e., not intended to be related to others. United States v. Tellier, 255 F.2d 441 (C.A.2, 1958), VIII Wigmore, McNaughton Revision (1961), § 2311.

 IBM's contention that Sperry is not entitled to protection with regard to the twenty-eight letters identified because the letters were not intended to be confidential is without merit. In testing a claim of the attorney-client privilege, the requirements set out by Judge Wyzanski should not be applied in an arbitrary, ritualistic fashion, but rather as a means of evaluating the particular claim in the context of the purpose of the privilege, i. e., encouraging free communication between attorney and client. American Cyanamid Company v. Hercules Powder Company, 211 F.Supp. 85 (Del.1962).

 The twenty-eight letters are correspondence between Sperry's[1] house counsel, *inter se,* and Sperry and outside counsel, all relative to a claim by Sperry against Northrop Aviation Corporation. The claim was for the unpaid balance on the purchase price of the BINAC computer, which Sperry had manufactured for Northrop, and the patent for which is now the subject of Interference No. 93,544. After reviewing the letters, it is apparent that the attorneys were acting as such and that they were not free to divulge the substance of the communications to

1. For convenience, the Court will generally refer to Sperry Rand and its predecessors in interest, Eckert-Mauchly and Remington Rand, as "Sperry" without further specification.

Northrop, as IBM suggests. They were, however, authorized to make certain disclosures for negotiation purposes. It is IBM's contention that the intention to permit any disclosure of the confidential communications destroys the confidentiality of all the communications. United States v. Tellier, supra.

In this case, unlike United States v. Tellier, supra, there is a discernible line between the material which Sperry intended to hold confidential and that which Sperry made available to Northrop. Thus, only those portions of the correspondence which were intended to be related to Northrop lack classic confidentiality [2] and, they, having been divulged to Northrop solely for the purposes of negotiating a settlement of the controversy, should not be regarded as public knowledge.

■■ Alternatively, IBM argues that Sperry waived all privilege when it entered into negotiations with Northrop. The attorney-client privilege may indeed be waived. However, the waiver must be clear and intentional, though no special words need be employed. Magida v. Continental Can Co., Inc., 12 F.R.D. 74 (S.D.N.Y.1951). While there is no indication that Sperry intended to waive all privilege, IBM argues that the disclosures to Northrop effectuated such a waiver. In re Associated Gas & Electric Co., 59 F.Supp. 743 (S.D.N.Y.1944).

■ The rule of partial disclosure as a qualification on the privilege should not be applied without reference both to the objectives of the privilege and the qualification. Wigmore explains the rule of partial disclosure as one dictated by considerations of fairness. VIII Wigmore, McNaughton Revision (1961), § 2327. The rule has also been explained as an attempt to prevent the use of the privilege as an "additional weapon." McCormick, Chapter 10, § 97 (1954).

Sperry disclosed confidential information to Northrop to the limited extent that it dealt with the defects in the BINAC which Sperry believed Northrop had excused. No reason has been suggested, and none appears in the record before the Court for construing the waiver other than as limited to this specific subject, to wit, defects in the BINAC which Sperry viewed as excused by Gore's letter of August 26, 1949. This narrow reading of the scope of the waiver will, in the Court's opinion, foster the free disclosure which the privilege is designed to encourage while protecting against misuse of the privilege to distort or mislead.

■ IBM next argues that the waiver of privilege was made all inclusive when Sperry surrendered certain letters between Sperry's attorneys, which Sperry did not consider privileged. Certainly, the production of material to which no privilege could have attached is not a waiver of the privilege as to those communications which would be protected. IBM has in no way indicated that the letters freely produced were (1) entitled to protection or (2) in any way related to the letters now under consideration. Therefore, the scope of the

2. In reaching this conclusion, the Court is not unmindful of Justice Cardozo's observation in Clark v. United States, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933): "[T]he recognition of a privilege does not mean that it is without conditions or exceptions. The social policy that will prevail in many situations may run foul in others of a different social policy, competing for supremacy. It is then the function of the Court to mediate between them * * *." In this case, the value of full discovery is to be balanced against the protection afforded by the privilege in the interest of free disclosure. Protecting these communications to the extent that they were intended to be confidential would do little harm to the objectives of full discovery; whereas, a denial of the protection would in effect destroy the privilege whenever a party enters into negotiations, doing violence both to the policy of free disclosure between attorney and client and that of encouraging parties to resolve their differences amicably, without resort to litigation.

waiver which the Court found above is not enlarged by the contention advanced here.

 Not discussed by IBM, no doubt because IBM could not have been aware of the situation, is the fact that some of the information in the twenty-eight letters was obtained by Sperry's attorneys from sources other than Sperry. This information is not entitled to protection, American Cyanamid Company v. Hercules Powder Company, supra, and, therefore, Sperry is directed to produce those portions of the correspondence containing such information.

IBM's motion for production of the documents in Group II is *pro forma* inasmuch as both parties agree that the Orders of this Court of November 6th and 13th include the material now sought. Therefore, only IBM's motion for the imposition of sanctions will require discussion.

The documents in Group II are (1) the "Eckert-Mauchly File", (2) executed copies of the contracts between Eckert-Mauchly and the National Bureau of Standards, the Nielsen Company and the Prudential Life Insurance Company, respectively and (3) the "applications log" kept by Eckert-Mauchly during the testing of the BINAC.

In response to IBM's motion for sanctions, Sperry has filed affidavits declaring that a diligent search has been made of all places where any of these materials might have been stored and that the materials have not been found. The fact that certain portions of the files of the Eckert-Mauchly Computer Corporation have gone astray is hardly remarkable. The documents in question are on the order of eighteen to twenty years of age. The people involved in writing, receiving, and maintaining these records either

have died or have long been separated from Eckert-Mauchly and its successors. Moreover, in the past twenty years the records and files have been disrupted not only by corporate reorganizations, Eckert-Mauchly was acquired by Remington Rand which later merged with the Sperry Corporation, but, also, by changes in physical facilities on several occasions.

 Admitting that Sperry has searched for the documents in Group II in good faith,[3] IBM argues that good faith will not excuse non-compliance with the production orders of this Court. Oregon-Washington Railway and Navigation Co. v. Strauss & Co., Inc., 38 F.Supp. 229 (Ore., 1940). In the instant case, unlike the *Oregon* case, there is considerable question whether the documents ever existed as IBM claims, to say nothing about the fact that in *Oregon* the documents were crucial to the defendant's case and were lost during the course of litigation; whereas, here, the documents, if in fact lost, are not shown to be determinative of the outcome of the patent interference.

In addition to the fact that IBM's citation of the Oregon case is inapposite, IBM has ignored the body of case law which declares that "the presence or lack of good faith in the parties is relevant to the orders which should be given and the severity of the sanctions." B. F. Goodrich Tire Co. v. Lyster, 328 F.2d 411 (C.A.5, 1964).[4] The language of the rule itself contemplates that the imposition of sanctions be so tempered:

"If any party * * * refuses to obey an order * * * made under Rule 34 to produce any document * * *, *the court may make such orders* in regard to the refusal *as are just,* and among others the following:

---

3. Initially, IBM questioned Sperry's good faith, but at oral argument abandoned this contention.

4. See Haskell v. Philadelphia Transportation Company, 19 F.R.D. 356 (E.D.Pa.,

1956) where the Court declined to order sanctions when a party was unable to locate the documents in question, requiring instead an affidavit of good faith.

* * *." Rule 37(b) (2). (Emphasis added.)

Therefore, only if Sperry's failure to produce is inexcusable, would this Court impose the sanctions sought by IBM.[5]

■ Turning now *seriatim* to the three items that make up Group II, attention will first be focused on the three contracts that IBM has demanded. The contracts which dealt with the UNIVAC, a sequel to the BINAC, were produced by Sperry in unexecuted form for inspection and copying by IBM. However, Sperry has declined IBM's invitation to stipulate that the unexecuted copies are identical to the executed ones, claiming that it is unable to confirm the fact of identity.

There is no question that Sperry has endeavored to locate the executed copies sought. Sperry, however, has not searched beyond the materials in its possession or control. IBM submits that Sperry's failure to approach the three companies which contracted with Sperry is an inexcusable failure to comply with the terms of this Court's orders. The order of November 6th directs Sperry:

"* * * [to] produce * * * a copy of each document within the possession, custody or control of Sperry, or its divisions or its related companies, or any of the attorneys or agents, including all documents to which they have a right of possession, * * *"

The order by its very terms imposes no duty on Sperry to approach either the National Bureau of Standards, the Niel-

sen Company or the Prudential Life Insurance Company in an effort to locate and secure executed copies of the contracts made with those companies by Sperry's predecessors. The search made by Sperry and the production of unexecuted copies of the said contracts are sufficient to ward off sanctions for noncompliance.

■ The so-called "Eckert-Mauchly File" is the second item in Group II. With regard to this item, Sperry contends that (1) there never was an "Eckert-Mauchly File" as such, and (2) it has produced except as privileged, all documents which would have been referred to as constituting the "File." In sum, Sperry has produced twenty-four letters and has withheld the twenty-eight letters, elsewhere discussed, as privileged. IBM replies that portions of the "File" are mysteriously missing. IBM's position is based on a single paragraph in a letter dated February 12, 1952, from one Remington Rand executive to another. The paragraph reads:

"I think that you should take the Eckert-Mauchly file with you, which I understand contains correspondence confirming the statements made above that the customer was given ample notification that Eckert-Mauchly did not consider the machine in proper condition to be shipped and consequently that they accepted the machine at their own risk."

This Court does not make as much of this paragraph as IBM. Certainly, it is no basis for concluding that the "File" contained more than the fifty-two letters

5. In its motion, IBM requests that the court impose the following sanctions on Sperry for failure to produce:
"In the event that Sperry Rand fails to produce all the documents sought, IBM further moves pursuant to Rule 37(b) F.R.C.P. for an order that the designated facts set forth in the assertions (a) to (d) above shall be taken to be established for the purposes of Interference No. 93,544 and all appeals and other proceedings arising there-

from, and further that Sperry Rand be prohibited from introducing in evidence in said interference or proceedings any document or testimony to the effect that the BINAC computer was actually or constructively reduced to practice, and be prohibited from supporting or asserting in said interference or proceedings any claim or allegation to the effect that the BINAC computer was actually or constructively reduced to practice."

that Sperry has identified, especially in light of the Sperry affidavits which detail the extensive search made for all materials within the scope of the production orders.

Lastly, IBM complains that Sperry has curiously been unable to locate the "applications log" kept by Eckert-Mauchly. The alleged "applications log" is distinct from the "diagnostic logbooks" that Sperry has produced for IBM. IBM's contention that an "applications log" was in fact kept is based upon the notation found in the personal log of Dr. Auerbach, one of the inventors of the BINAC, that certain materials could be found in the "applications log." On examination during the interference proceedings, Dr. Auerbach testified in response to IBM's question that

> "I am reasonably sure that this was a logbook kept by somebody. I am not quite sure from the record or at this late date just who kept it. It is also very possible that such a logbook was kept by an individual who lost it. Since I referred to it, I would assume that the thing did in fact exist." [6]

In a supplemental affidavit, filed with the Court's permission, immediately after the oral argument, counsel for Sperry related that:

> "In the middle of the year 1967, he noticed a reference to 'applications log' in a BINAC log book, specifically Eckert-Mauchly log book 7C which is now Williams, et al. Exhibit B7. He consulted Dr. John Mauchly who had been in charge of the applications group, the two members of said group still employed by Sperry Rand Corporation, a former employee who had been in said applications group, and others as to whether such a log or log book had existed, and if so, how it might be identified. He invesigated into the places where such a log or log book would have been kept, and examined the indices of the various

log books of the UNIVAC Division of Sperry Rand Corporation and its predecessors. He found no such log or log book, no person with knowledge of such a log or log book, and no record (other than the above-quoted reference) of such a log or log book having ever existed.

> "He did find that there were numerous documents which had been written by the applications group, and all of those documents were produced for inspection by the party, IBM, pursuant to the the Orders of the Court of November 6 and 13, 1967. In connection with the production of documents pursuant, to said Orders, he reinvestigated into the question of existence of any 'applications logs' and was unable to find any such logs or learn any facts as to the former existence of the same."

Whether the "applications log" ever existed is probably beyond certain proof today. What is clear is that Sperry has apparently made a determined effort to establish whether such a log did exist, and if so, how it could be identified or located. IBM does not dispute that Sperry has in good faith attempted to produce the log; nevertheless, IBM clings tenaciously to the qualified recollection of Dr. Auerbach, as to the log's existence some twenty years ago. In these circumstances, this Court is unable to conclude that Sperry's failure to produce the elusive log is inexcusable.

## RULINGS

The twenty-eight documents are privileged except to the extent that:

(a) The privilege was waived in (1) the fifth and sixth paragraphs of Eltgroth's letter to Sterck dated February 14, 1951, (2) the first three paragraphs on page 2 of Eltgroth's letter to McNamara dated May 23, 1952; and

(b) The information in the correspondence was not reported to the

---

6. Quoted at oral argument. Transcript p. 68.

attorney by the client (1) in the third through seventh paragraphs of Schuck's letter to Sterck dated November 20, 1951, and (2) sub-paragraphs 2 and 3 on page 2 of Schuck's letter to Sterck dated February 13, 1952.

No ruling is made with respect to the relevance. of these or any of the documents protected because Sperry has not raised the point. However, the Court, on its own, notes that a substantial portion of the correspondence would appear superficially to be wholly irrelevant to the issues in the patent interference, and in several instances represents merely the acknowledgment by one attorney of materials forwarded by another.

The motion for sanctions under Rule 37(b) (2) is denied.

Submit order.