**STARSIGHT TELECAST, INC., Plaintiff,**

v.

**GEMSTAR DEVELOPMENT CORP. and Michael R. Levine, Defendants.**

**And Related Counterclaims.**

**Civ. No. C93–20777 RMW/EAI.**

United States District Court,
N.D. California.

Dec. 12, 1994.

fer for convenience purposes is within the discretion of the Illinois district court.

James Vickery, Daniel Johnson, Jr., Cooley Godward Castro Huddleson & Tatum, Palo Alto, CA, for Starsight.

Elizabeth Mann, Howrey & Simon, Los Angeles, CA, for Gemstar Development Corp. and Michael Levine.

## ORDER GRANTING IN PART AND DENYING IN PART STARSIGHT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

INFANTE, United States Magistrate Judge.

### I.  INTRODUCTION

Plaintiff Starsight Telecast, Inc.'s ("Starsight") motion to compel production of privi-

1.  The contested documents are identified on a privilege log entitled, "Revised Log of Starsight's

leged documents was heard on October 5, 1994.  James Vickery of Cooley Godward Castro Huddleson & Tatum appeared on behalf of Starsight.  Elizabeth Mann of Howrey & Simon appeared on behalf of defendants Gemstar Development Corp. ("Gemstar") and Michael Levine ("Levine").  Thereafter, Gemstar submitted all of the contested documents for *in camera* review.[1]  Having reviewed the contested documents, considered the comments of counsel, and good cause appearing, Starsight's motion is GRANTED in part and DENIED in part as follows.

### II.  BACKGROUND

#### A.  Starsight's Allegations

This is a patent infringement suit in which two competing companies, Gemstar and Starsight, claim preeminent patent rights to exploit a product that is typically referred to as an electronic television guide.  Starsight's complaint against Gemstar and Levine alleges infringement of U.S. Patent No. 5,151,789 (the '789 patent), entitled "System and Method for Automatic, Unattended Recording of Cable Television Programs."  Starsight Complaint, ¶¶ 13–14.  Starsight also seeks a declaratory judgment on several grounds, including that Gemstar's competing patent, U.S. Patent No. 4,908,713 (the '713 patent), entitled "VCR Programmer," is invalid because the inventor of the '713 patent, Levine, and his attorneys engaged in inequitable conduct by failing to disclose material prior art to the U.S. Patent Office (the "PTO").  Starsight Complaint, ¶¶ 21–54.

Starsight's inequitable conduct theory is that during the application process for the '713 patent, the patent examiner specifically placed Levine and his attorney Allen Krass on notice that the only novel feature in the invention was the "program schedule display generator," and therefore, prior art relating to that feature was highly relevant and material.  Starsight's Opposition to Gemstar's Motion to Compel Production of Documents, pp. 3–4.  More specifically, the examiner stated:

Selected Documents It Seeks To Compel From the Levine Privilege Log."

The prior art does not show or render obvious the particular program schedule display generator as found in the subcombination claim 40 and other combination claims with the recorder. Since the previous claims were all drawn solely to the combination with a recorder without the specifics of the program schedule generator as now claimed, the present claims are evidence that applicant believes novelty lies in the program schedule display generator per se. Otherwise the present claims, in view of the previous broader independent claims as evidence claims, are restrictable between the combination and subcombination. The combination of a program control for a recorder with television display of program data has been established as well known in the art, so should the specific program schedule display generator be found unpatentable for any prior art reason in the future, the combination claims would be considered an obvious design choice and also fall for the same reason as the subcombination claims 40+.

U.S. Patent 4,908,713, Notice of Allowability, dated September 14, 1989.[2]

Starsight further asserts that it specifically supplied Levine and his attorney with several relevant prior art references during the pendency of the '713 patent application, including the Kruger patent, teletext systems such as "Ceefax" that display TV program information stored locally, and the *DIP II* and *CableData* advertisements from *Cable Vision* Magazine. Levine and his attorney deny that they failed to disclose material prior art, and contend that they were "set up" for the inequitable conduct charge. Gemstar's Opposition, pp. 4–6.[3]

### B. Procedural Background

The Court and the parties agreed to a complex scheduling order, which among other things, limited initial discovery to Starsight's inequitable conduct claim. Levine la-

ter voluntarily produced "all privileged documents created during the prosecution of the ['713 patent], issued on March 13, 1990, that concern any item of alleged prior art that Starsight has identified in its charges of inequitable conduct set forth in its First Amended Complaint." Gemstar's Opposition, p. 1. Levine and Gemstar also allowed deposition questioning regarding the substance of the produced documents.

Dissatisfied with the results of Levine's voluntary production, Starsight presently seeks additional privileged documents generally described as follows:

(1) all documents which relate to the prosecution of United States Patent No. 4,903,-713 (" '713 Patent"), including but not limited to the claims of the original application and the amended claims which ultimately issued as the '713 Patent;

(2) all documents related to the filing of Supplemental Information Disclosure Statements which referenced the *DIP II* and *CableData* advertisements, Levine's declaration purporting to correct said Supplemental Information Disclosure Statements, and the claims of the continuations and continuations-in-part in which these documents were filed; and

(3) all documents related to prior art in the field of TV schedule display, teletext/videotext art and/or the prior art references provided to Mr. Krass by Mr. Faber.

Starsight's Motion to Compel Production of Documents, p. 1.

### III. DISCUSSION

It is undisputed that the documents described above are privileged. Nevertheless, Starsight asserts that it is entitled to such documents because: (a) Gemstar and Levine, through deposition testimony and through declarations (submitted in support of their motion for summary judgment on the issue of inequitable conduct), have placed Levine

---

**2.** *See* Johnson Decl. in Support of Starsight's Motion to Compel Production of Documents, Ex. I, filed Sept. 22, 1994.

**3.** The so-called "set up" is described in detail in this court's Order (1) Granting in Part and Deny-

ing in Part Gemstar and Levine's Motion to Compel Production of Documents; and (2) Granting in Part and Denying in Part Starsight's Counter Motion For A Protective Order, dated November 16, 1994.

and his attorney's intent and knowledge of material prior art at issue; and (b) Levine and his attorney's inequitable conduct before the PTO vitiates the privilege with respect to the prosecution of the '713 patent application and documents relating to steps taken in furtherance of the concealment of inequitable conduct in related applications. Starsight' Motion, 1:12–19, 7:19–24.

Gemstar and Levine contend that they have merely denied Starsight's allegations of inequitable conduct, and that a mere denial, without more, is insufficient to place their intent at issue or to trigger a waiver of the attorney-client privilege. They also emphasize that they have not raised a "reliance on counsel" defense, and will not do so. Gemstar and Levine's Opposition, p. 9. Gemstar and Levine further argue that the crime/fraud exception to the attorney-client privilege does not apply to the documents at issue because they post-date the issuance of the '713 patent, and therefore could not have been prepared in furtherance of any crime or fraud on the PTO. Gemstar's Opposition, pp. 2–3.[4]

### A. Whether the Attorney–Client Privilege Has Been Waived

■ In general, a party's voluntary disclosure of one or more privileged communications between the party and his attorney waives the privilege as to all communications between the party and his attorney on the same subject. *Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136, 156 (D.Del.1977); *Handgards, Inc. v. Johnson & Johnson*, 413 F.Supp. 926, 929 (N.D.Cal.1976); *McCormick–Morgan, Inc. v. Teledyne Industries*, 765 F.Supp. 611 (N.D.Cal.1991); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F.Supp. 1146, 1161 (D.S.C.1974). The underlying rationale is one of fairness: "A party cannot disclose only those facts beneficial to its case and refuse to disclose, on the grounds of privilege, related facts adverse to its position." *Hercules*, 434 F.Supp. at 156.

In *General Electric Co. v. Hoechst Celanese Corp.*, for example, the defendants to a patent infringement claim counterclaimed against G.E. for a declaration of noninfringement, invalidity, and unenforceability of GE's patent. During discovery, defendants requested a number of purportedly privileged documents from GE, asserting, *inter alia*, that GE waived the privilege by producing evidence that it did not have the requisite "state of mind" to commit fraud on the PTO. *General Electric Co. v. Hoechst Celanese Corp.*, 15 U.S.P.Q.2d 1673, 1990 WL 154218 (D.Del.1990). GE offered the testimony of a key employee and an attorney, who both denied any recollection of a certain alleged prior art during the relevant period. *Id.* at 1678. The witnesses also testified that if they had remembered the alleged prior art, they would have considered it irrelevant to GE's patent, and therefore they did not have the "intent" to defraud the PTO examiner. *Id.*

In determining whether GE waived its privilege, the court reasoned:

> A mere denial of intent, without more, is insufficient to constitute a waiver. *See Lorenz v. Valley Forge Insurance Co.*, 815 F.2d 1095, 1098 (7th Cir.1987). On the other hand, when state of mind is an issue in a case, a party should not be permitted to testify about its state of mind at the time alleged privileged communication[s] occurred, without pointing to nonprivileged evidence to substantiate its claim or allowing the opposition to discover the privileged communications themselves.

*Id.* at 1679. The court concluded that the only way for defendants to refute the testimony offered by GE was to examine the substance of the privileged communications pertaining to GE's prosection of its patent. Nevertheless, the court ordered GE to produce the documents in question for *in camera* inspection so that the court could determine whether they had any bearing on GE's

---

4. Gemstar and Levine also assert that they produced documents and deposition testimony relating to the alleged prior art only because Starsight expressly agreed that the productions would not result in a waiver of the attorney-client privilege, and that finding a waiver under

these circumstances would unfairly "punish" them for cooperating with opposing counsel. Gemstar's Opposition, p. 2. However, Starsight asserts that the agreement was premised on the understanding that the production would not be selective. Starsight's Reply, p. 5, n. 3.

state of mind and whether the crime/fraud exception applied. *Id.* at 1680.

■ In the present case, Starsight specifically points to the following paragraphs of Levine's declaration dated December 4, 1993, as a basis for finding waiver:

3. Based upon my frequent inventing activity and my efforts to protect those inventions through the United States patent system, I am personally familiar with the rules and regulations of the United States Patent Office as they affect inventors such as myself. In particular, I am personally familiar with the duty to disclose information material to patentability set forth in 37 C.F.R. ¶ 1.56.

4. For over ten years I have been represented in patent matters by Allen Krass, of Krass & Young in Troy, Michigan. It is my custom and practice to disclose to Mr. Krass or to other lawyers working in Mr. Krass' law firm, any or all prior art about which I am aware that is material to any invention that I am seeking to have patented.

5. All material prior art concerning the subject matter of the '713 patent about which I was aware during the period preceding the issuance of the '713 patent was disclosed to my counsel, Allen Krass.

*See* Johnson Decl., Ex. J. Starsight also specifically cites to the following paragraph of Krass' declaration, signed December 6, 1993:

22. All material prior art about which I was aware during the prosecution of the applications leading to the issuance of the '713 patent were disclosed by me or others at my direction to the U.S. Patent and Trademark Office in accordance with 37 C.F.R. § 1.56.

*See* Johnson Decl., Ex. K. Starsight argues that these two declarations constitute far more than a mere denial of the inequitable conduct charge, and therefore, resulted in a waiver of the attorney-client privilege.

Starsight further contends that Levine and his patent attorneys, Krass and Marshall, testified extensively at their depositions regarding how the claims of the '713 Patent differ from the prior art described in conversations with, and correspondence from Starsight. Starsight's Motion, p. 7. In support of this contention, Starsight cites to Krass' comment that the prior art information provided by Starsight was "totally different and less relevant than art that was previously before the patent office." *See* Krass Depo., 532:23–534:13 attached as Ex. G to Johnson Decl. Starsight also asserts that Marshall similarly testified that the advertisements provided by Starsight were not material to the '713 patent. *See* Marshall Depo., 33:23–34:8 attached as Ex. H to Johnson Decl.

The deposition testimony and declarations cited above are similar to the testimony offered in *General Electric v. Hoechst Celanese, supra.* In each case, the testimony and declarations in question address two key elements of the parties' inequitable conduct claim: knowledge of the purported prior art, and the relevancy or materiality of such art. More specifically, Levine makes affirmative representations in his declaration that he provided his counsel, Krass, with all material prior art about which he was aware. Similarly, Krass specifically states in his declaration that he submitted all material prior art about which he was aware to the PTO. Furthermore, Marshall and Krass testified during their depositions regarding the materiality of the references provided by Starsight. Under the totality of these circumstances, the Court finds that Gemstar and Levine have done more than merely deny Starsight's charge of inequitable conduct, and therefore they have partially waived the attorney-client privilege as discussed below.

*B. Scope of the Waiver*

■ Gemstar and Levine's voluntary disclosure of privileged communications constitutes a waiver of the attorney-client privilege as to all communications on the same subject matter. *Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. at 156; *Handgards, Inc. v. Johnson & Johnson,* 413 F.Supp. at 929; *McCormick–Morgan, Inc. v. Teledyne Industries,* 765 F.Supp. at 613–614; *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. at 1161. Ac-

cordingly, the scope of the waiver in the present case extends to communications concerning how the alleged prior art references identified in Starsight's charges of inequitable conduct relate to the '713 patent application before the PTO, including continuation and continuation-in-part applications arising out of the application that matured into the '713 patent. *See Hercules,* 434 F.Supp. at 156 (citing *International Business Machines v. Sperry Rand Corp.,* 44 F.R.D. 10 (D.Del.1968); *International Paper Co. v. Fibreboard Corp.,* 63 F.R.D. 88 (D.Del.1974); *Lee National Corp. v. Deramus,* 313 F.Supp. 224 (D.Del.1970)); *Handgards, Inc.,* 413 F.Supp. at 929 (citing *Garfinkle v. Arcata National Corp.,* 64 F.R.D. 688 (S.D.N.Y. 1974)).

After conducting an *in camera* review, the Court finds that the attorney-client privilege has been waived as to the following documents that refer to the prior art identified in Starsight's charges of inequitable conduct: Nos. 267, 321, 443, 454, 474, 476, and 477.[5] The remaining contested documents do not fall within the subject matter of Levine and Krass' declarations and deposition testimony.

There is no basis for the expansive waiver sought by Starsight. The waiver exception has been narrowly construed, and has been applied "if facts relevant to a particular, narrow subject matter have been disclosed in circumstances in which it would be unfair to deny the other party an opportunity to discover other relevant facts with respect to that subject matter." *Hercules,* 434 F.Supp. at 156; *See also Kelsey–Hayes v. Motor Wheel Corp.,* 155 F.R.D. 170 (W.D.Mich. 1991). "If a discernible line exists between the information withheld and the information disclosed, the line should be maintained." *American Standard, Inc. v. Pfizer Inc.,* 229 U.S.P.Q. 897, 1986 WL 9713 (D.Del.1986), citing *International Business Machines, Corp. v. Sperry Rand Corp.,* 44 F.R.D. 10, 13 (D.Del.1968). "Ultimately, therefore, it is the subject matter of the documents disclosed, balanced by the need to protect the frankness of client disclosure and to preclude

unfair partial disclosures, which must guide the Court." *Id.* Gemstar and Levine have already provided Starsight with all privileged documents created during the prosecution of Levine's '713 patent that concern any of the alleged prior art that Starsight provided to Levine and Krass. *See* Gemstar's Opposition, p. 1. The remaining contested documents simply will not shed any new light on the information already produced to Starsight. Considering the documents already produced by the defendants, the deposition testimony and declarations of Messrs. Levine and Krass, and applying a rule of fairness, the Court finds that the non-disclosure of the remaining contested documents does not unfairly deprive Starsight of access to the factual basis for the denials of Levine and Krass.

## C. The Crime/Fraud Exception

■ Documents or communications which otherwise are protected by the attorney-client privilege may be discoverable if made in furtherance of a crime or fraud. *Clark v. U.S.,* 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993 (1933); *Hercules, supra.* In the patent application context, to pierce the attorney-client privilege, a party must establish a *prima facie* case of fraud on the PTO. Specifically, the party must show (1) a knowing, willful and intentional act of misrepresentation or omission before the PTO, (2) that the misrepresentation or omission was material, and (3) reliance. *American Optical Corp. v. United States,* 179 U.S.P.Q. 682, 684, 1973 WL 20128 (Ct.Cl.1973). *See also, Bulk Lift International, Inc. v. Flexcon Systems, Inc.,* 122 F.R.D. 493, 9 U.S.P.Q.2d 1355, 1362 (W.D.La.1988).

■ The party seeking to pierce the attorney-client privilege must also show that the communications were made in furtherance of the fraud. *Hercules,* 434 F.Supp. at 155. "Communications made before the fact of or during the commission of a fraud are not protected, since to allow protection to attach to such communications would permit an attorney to be a principal or accessory to a

5. Although these documents post-date the issuance of the '713 patent, they are within the scope of the subject matter waiver. *See McCormick-*

*Morgan, Inc. v. Teledyne Industries, Inc.,* 765 F.Supp. at 613–14 (it is inappropriate to limit waiver on a temporal basis).

fraud without fear of discovery and would permit the client to commit fraud with the aid of legal advice beforehand." *Id.* On the other hand, communications after the fact remain protected. *Id.*

 Having carefully reviewed the documents at issue *in camera*, the Court concludes that none of the contested documents could be said to have been prepared in furtherance of fraud upon the PTO. Most of the documents at issue do not even mention the purported prior art supplied by Starsight. The very few documents that do mention Starsight's prior art references were prepared after the '713 patent was issued. Although Starsight suggests that documents post-dating the issuance of the '713 patent may nevertheless disclose a continuing plan to commit fraud on the PTO, it is clear after conducting an *in camera* review that the documents do not, in fact, hint of any such plan. Accordingly, none of the documents at issue are discoverable based on the crime/fraud exception.

## IV. CONCLUSION

Gemstar and Levine have waived the attorney-client as to the following documents that refer to the prior art identified in Starsight's charges of inequitable conduct: Nos. 267, 321, 443, 454, 474, 476, and 477. Accordingly, Starsight's motion to compel production of documents is GRANTED in part as to documents nos. 267, 321, 443, 454, 474, 476, and 477, and DENIED in part as to the remaining contested documents.

**IT IS SO ORDERED.**